| | |
|---|---|
| James E. Cecchi<br>Lindsey H. Taylor<br>CARELLA, BYRNE, CECCHI<br>OLSTEIN, BRODY & AGNELLO<br>5 Becker Farm Road<br>Roseland, New Jersey 07068<br>(973) 994-1700 | Samuel H. Rudman<br>ROBBINS GELLER RUDMAN<br>  & DOWD LLP<br>58 South Service Road, Suite 200<br>Melville, NY  11747<br>(631) 367-7100 |
| Christopher A. Seeger<br>Stephen A. Weiss<br>SEEGER WEISS<br>77 Water Street, 8th Floor<br>New York, New York 10005<br>(212) 584-0700 | Paul J. Geller<br>Stuart A. Davidson<br>ROBBINS GELLER RUDMAN<br>  & DOWD LLP<br>120 East Palmetto Park Road, Suite 500<br>Boca Raton, Florida 33432<br>(561) 750-3000 |

Attorneys for Plaintiff

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| BENIAK ENTERPRISES, INC. d/b/a BENITO RISTORANTE, on behalf of itself and all others similarly situated,<br><br>        Plaintiff,<br><br>v.<br><br>CHUBB LTD, and INDEMNITY INSURANCE COMPANY OF NORTH AMERICA<br><br>        Defendants. | Civil Action No. 20-5536 (KM)(JBC)<br><br><br><br><u>**NOTICE OF APPEAL**</u> |

To:  Clerk and All Persons on ECF Service List

      PLEASE TAKE NOTICE that Plaintiff appeals to the United States Court of Appeals for the Third Circuit from the annexed Opinion and Order granting Defendant's motion to dismiss filed in this case on August 26, 2021 (Docket Entries 32 and 33) dismissing Plaintiff's claims with prejudice.

                                                            CARELLA, BYRNE, CECCHI,
                                                            OLSTEIN, BRODY & AGNELLO
                                                            Attorneys for Plaintiff


                                                            By:    /s/ James E. Cecchi
                                                                  JAMES E. CECCHI

DATED:  September 8, 2021

Christopher A. Seeger
Stephen A. Weiss
SEEGER WEISS
77 Water Street, 8th Floor
New York, New York 10005
(212) 584-0700

Samuel H. Rudman
ROBBINS GELLER RUDMAN
  & DOWD LLP
58 South Service Road, Suite 200
Melville, NY  11747
(631) 367-7100

Paul J. Geller
Stuart A. Davidson
ROBBINS GELLER RUDMAN
  & DOWD LLP
120 East Palmetto Park Road, Suite 500
Boca Raton, Florida 33432
(561) 750-3000

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| **BENIAK ENTERPRISES, INC,**<br><br>         **Plaintiff,**<br><br>v.<br><br>**INDEMNITY INSURANCE COMPANY OF NORTH AMERICA,**<br><br>         **Defendant.** | Civ. No. 20-5536 (KM)(JBC)<br><br>OPINION |

**KEVIN MCNULTY, U.S.D.J.:**

      Plaintiff Beniak Enterprises, Inc. d/b/a Benito Ristorante ("Beniak") is a New Jersey corporation that operates a restaurant in Union New Jersey. Defendant Indemnity Insurance Company of North America ("IINA") issued to Beniak a commercial-property insurance policy. Beniak alleges that the "all-risk" commercial insurance it purchased from IINA indemnifies it for actual business losses incurred when business operations are involuntarily suspended, interrupted, or curtailed, and when access to the premises is prohibited, because of (1) direct physical loss or damage to the property, or (2) by a civil authority order that restricts access to the property ("business interruption coverage"). Beniak unsuccessfully sought coverage pursuant to that policy when its restaurant operations were halted as a result of measures put in place by civil authorities to stop the spread of COVID-19.

      Beniak initiated this action against IINA[1] for declaratory judgment that the COVID-19 global pandemic and the responses taken by civil authorities to

---

[1] Beniak initially brought this action against IINA and Chubb LTD ("Chubb"), a Swiss corporation that owns subsidiaries, including IINA, that issue property insurance. (Compl. ¶15.) The parties later stipulated voluntary dismissal of the action against Chubb without prejudice. (DE 20.)

1

stop the spread of the virus (1) triggers coverages, (2) has caused physical property loss and damage to the insured property, and (3) provides coverage for future civil authority orders that result in future suspension of business operations. Beniak also seeks declaratory judgment that IINA is liable for the losses Beniak suffered. Additionally, Beniak brings breach of contract claims for IINA's failure to indemnify Beniak and other similarly situated for business losses and extra expenses related to actions taken by civil authority to stop the spread of the COVID-19 outbreak. Beniak brings this action on behalf of a proposed class of policyholders who paid premiums in exchange for an all-risk commercial property insurance policy that covered such loss of business income and extra expenses.

IINA now moves for judgment on the pleadings on the grounds that (1) Beniak's business income and extra expenses claim fails because it does not allege direct physical loss or damage to its property, (2) Beniak's civil authority claim fails because it does not allege that any authority prohibited access to the property due to physical damage, and (3) the policy's virus exclusion bars coverage.

For the reasons provided herein, I will grant IINA's motion.

## I. Summary[2]

### a. Factual Allegations

<u>The Policy in Issue</u>

IINA issued to Beniak Policy No. MCRD38178813 (the "Policy") for the period between August 1, 2019 and August 1, 2020. (Compl. ¶16; Ans. ¶16.)

---

[2]   Citations to the record will be abbreviated as follows. Citations to page numbers refer to the page numbers assigned through the Electronic Court Filing system, unless otherwise indicated:

"DE" = Docket entry number in this case.

"Compl." = Beniak's Complaint and Demand for Jury Trial (DE 1)

"Ans." = IINA's Answer to the Complaint and Demand for Jury Trial (DE 8)

"Br." = IINA's Memorandum of Law in Support of Motion for Judgment on the Pleadings (DE 26-8)

Plaintiff alleges that it paid the premiums on that Policy specifically "for coverage of lost business income and extra expenses in the event of an involuntary business interruption." (Compl. ¶17.)

In pertinent part, the Policy included a Business Income (And Extra Expense) Coverage Form, which provided:

> We will pay for the actual loss of Business Income you sustain due to the necessary "suspension" of your "operations" during the "period of restoration". The "suspension" must be caused by direct physical loss of or damage to property at premises which are described in the Declarations and for which a Business Income Limit Of Insurance is shown in the Declarations. The loss or damage must be caused by or result from a Covered Cause of Loss. With respect to loss of or damage to personal property in the open or personal property in a vehicle, the described premises include the area within 100 feet of such premises.

(*Id.* ¶38.)

"Causes of loss" are defined and "means direct physical loss unless the loss is excluded or limited in this policy." (*Id.* ¶42.) One such exclusion is the "Exclusion of Loss Due To Virus or Bacteria" (the "virus exclusion"). (*Id.* ¶43.) Pursuant to that endorsement, the Policy excludes coverage for "loss or damage caused by or resulting from any virus, bacterium or other microorganism that induces or is capable of inducing physical distress, illness or disease." (*Id.*)

The Policy also contained "Additional Coverages" which included, in relevant part, coverage for losses sustained when access to covered property is prohibited by a civil authority:

> 5. Additional Coverages
>
> a.   Civil Authority
>
> In this Additional Coverage, Civil Authority, the described premises are premises to which this Coverage Form applies, as shown in the Declarations. When a Covered Cause of Loss causes damage to

---

"Opp." = Beniak's' Brief in Opposition to IINA's Motion for Judgment on the Pleadings (DE 27)

property other than property at the described premises, we will pay for the actual loss of Business Income you sustain and necessary Extra Expense caused by action of civil authority that prohibits access to the described premises, provided that both of the following apply:

(1)  Access to the area immediately surrounding the damaged property is prohibited by civil authority as a result of the damage, and the described premises are within that area but are not more than one mile from the damaged property; and

(2)  The action of civil authority is taken in response to dangerous physical conditions resulting from the damage or continuation of the Covered Cause of Loss that caused the damage, or the action is taken to enable a civil authority to have unimpeded access to the damaged property.

Civil Authority Coverage for Business Income will begin 72 hours after the time of the first action of civil authority that prohibits access to the described premises and will apply for a period of up to four consecutive weeks from the date on which such coverage began.

Civil Authority Coverage for Extra Expense will begin immediately after the time of the first action of civil authority that prohibits access to the described premises and will end:

(1)  Four consecutive weeks after the date of that action; or
(2)  When your Civil Authority Coverage for Business Income ends;

whichever is later.

(*Id.* ¶39.)

Restrictions Placed on Beniak's Restaurant

On March 16, 2020, New Jersey Governor Murphy ordered closures of all "gyms, movie theaters, bars, and casinos" in response to the COVID-19 global pandemic (the "Closure Order"). (*Id.* ¶31.) Pursuant to the Closure Order, "[r]estaurants were limited to take-out and delivery orders only." (*Id.*)  On March 21, 2020, Governor Murphy issued a "stay at home" order which required "New Jersey residents to stay at home except for necessary travel and

mandated that all non-essential business close until further notice." (*Id.*) Due to those Closure Orders, Beniak's Restaurant was "unable to operate in the ordinary course of business." (*Id.* ¶32.)

Beniak alleges that the interruption of its business, and the businesses of the other proposed class members, was not caused by any of the circumstances contained in the exclusions set forth in the Policy. (*Id.* ¶42.) Beniak also alleges that it and all similarly situated proposed class members "have suffered a direct physical loss of and damage to their property because they have been unable to use their property for its intended purpose."[3] (*Id.* ¶44.) Beniak's claims under the Policy's business interruption coverage were denied by the insurer. (*Id.* ¶46.)

### b. Procedural History

Beniak initiated this action on May 5, 2020. (DE 1.) The Complaint asserts the following causes of action on behalf of itself and the proposed class members:

**Count I** – Declaratory Judgment (Business Income Coverage)

**Count II** – Breach of Contract (Business Income Coverage)

**Count III** – Anticipatory Breach of Contract (Business Income Coverage)

**Count IV** – Declaratory Judgment (Civil Authority Coverage)

**Count V** – Breach of Contract (Civil Authority Coverage)

**Count VI** – Declaratory Judgment (Extra Expense Coverage)

**Count VII** – Breach of Contract (Extra Expense Coverage)

(Compl. ¶¶73-129.)

On September 9, 2020, IINA filed its Answer to Beniak's Complaint. (DE 8). IINA now moves for judgment on the pleadings, pursuant to Fed. R. Civ. P. 12(c).

---

[3] At the time of the Complaint, the "stay at home" order was still in effect. (Compl. ¶32.)

## II. Legal Standards

### a. Judgment on the Pleadings

Federal Rule of Civil Procedure Rule 12(c) provides for judgment on the pleadings after the pleadings have been closed. A motion for judgment on the pleadings will be granted "if, on the basis of the pleadings, the movant is entitled to judgment as a matter of law. The court will accept the complaint's well-pleaded allegations as true, and construe the complaint in the light most favorable to the nonmoving party, but will not accept unsupported conclusory statements." *DiCarlo v. St. Mary Hosp.*, 530 F.3d 255, 262-263 (3d Cir. 2008) (internal citations omitted). For present purposes, there is no material difference in the legal standards between a Rule 12(c) motion and a Rule 12(b)(6) motion. *See Spruill v. Gillis*, 372 F.3d 218, 223 n.2 (3d Cir. 2004).

Federal Rule of Civil Procedure Rule 12(b)(6) provides for the dismissal of a complaint if it fails to state a claim upon which relief can be granted. The defendant, as the moving party, bears the burden of showing that no claim has been stated. *Animal Science Products, Inc. v. China Minmetals Corp.*, 654 F.3d 462, 469 n.9 (3d Cir. 2011). For the purposes of a motion to dismiss, the facts alleged in the complaint are accepted as true and all reasonable inferences are drawn in favor of the plaintiff. *New Jersey Carpenters & the Trustees Thereof v. Tishman Const. Corp. of New Jersey*, 760 F.3d 297, 302 (3d Cir. 2014).

Federal Rule of Procedure 8(a) does not require that a complaint contain detailed factual allegations. Nevertheless, "a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). Thus, the complaint's factual allegations must be sufficient to raise a plaintiff's right to relief above a speculative level, so that a claim is "plausible on its face." *Id.* at 570, 127 S.Ct. 1955; *see also West Run Student Housing Assocs., LLC v. Huntington Nat. Bank*, 712 F.3d 165, 169 (3d Cir. 2013). That facial-plausibility standard is met "when the plaintiff pleads

factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556, 127 S.Ct. 1955). While "[t]he plausibility standard is not akin to a 'probability requirement' . . . it asks for more than a sheer possibility." *Iqbal*, 556 U.S. at 678.

### b. Interpretation of Insurance Contracts

Interpretation of an insurance policy is a question of law. *Ramara, Inc. v. Westfield Ins. Co.*, 814 F.3d 660, 674 (3d Cir. 2016). "Since insurance policies are considered contracts and contract interpretation is generally a question of law, we apply ordinary principles of contract law." *Transamerican Office Furniture v. Travelers Prop. & Cas.*, 222 F. Supp. 2d 689, 691 (E.D. Pa. 2002).

First, courts look to the plain language of the insurance policy. *Zacarias v. Allstate Ins. Co.*, 775 A.2d 1262, 1264 (N.J. 2001) ("In the first instance, the words of an insurance policy are to be given their plain, ordinary meaning."). If the language is unambiguous, courts will enforce it as written, and "should not write for the insured a better policy of insurance than the one purchased." *Id.* (quoting *Gibson v. Callaghan*, 730 A.2d 1278, 1282 (N.J. 1999)) (internal quotation marks omitted). However, where there is ambiguity in the policy language, "courts interpret the contract to comport with the reasonable expectations of the insured, even if a close reading of the written text reveals a contrary meaning." *Id.*

Exclusions in a policy, while enforceable, "are ordinarily strictly construed against the insurer." *Flomerfelt v. Cardiello*, 997 A.2d 991, 997 (N.J. 2010). However, that interpretive principle does not permit a court to disregard an exclusion's plain meaning. *Id.* When an exclusion clearly applies to a complaint's allegations, a court may dismiss the complaint. See, *e.g.*, *Brewer v. U.S. Fire Ins. Co.*, 446 F. App'x 506, 510 (3d Cir. 2011).

### III.  Discussion

IINA moves for judgment on the pleadings on three bases: (1) Beniak's claim for business income and extra expenses fails because it does not allege

7

direct physical loss or damage to its property; (2) Beniak's civil authority claim fails because it does not allege that any authority prohibited access to the property due to physical damage; and (3) the Policy's virus exclusion bars coverage. Because I find the virus exclusion bars Beniak's claims, I will grant IINA's motion for judgment on the pleadings. It is therefore unnecessary to address grounds (1) and (2).

Multiple courts within the Third Circuit have held that virus exclusions bar claims for losses related to measures taken to curb the spread of COVID-19. *See, e.g.*, *Eye Care Ctr. of N.J., PA v. Twin City Fire Ins. Co.*, 2021 WL 457890, at *3 (D.N.J. Feb. 8, 2021) (coverage barred by virus exclusion excluding loss or damage "caused directly or indirectly by" the "[p]resence, growth, proliferation, spread or any activity of … virus"); *Ultimate Hearing Sols. II, LLC v. Twin City Fire Ins. Co.*, No. 20-2401, 2021 WL 131556, at *4 (E.D. Pa. Jan. 14, 2021) (coverage barred by virus exclusion excluding coverage for loss or damage "caused directly or indirectly by … [p]resence, growth, proliferation, spread or any activity of … virus"); *Humans & Resources, LLC, D/B/A Cadence Restaurant v. Firstline Nat'l Ins. Co.*, No. 20-2152, 2021 WL 75775, at *8 (E.D. Pa. Jan. 8, 2021) (coverage barred by virus exclusion excluding coverage for loss or damage caused by "[a]ny virus, bacterium or other microorganism that induces or is capable of inducing physical distress, illness or disease"); *Boulevard Carroll Entm't Grp., Inc. v. Fireman's Fund Ins. Co.*, No. 20-11771, 2020 WL 7338081, at *2 (D.N.J. Dec. 14, 2020) (coverage barred because "the Policy clearly excludes coverage for damage, loss or expense arising from a virus. Because the Stay-at-Home Orders were issued to mitigate the spread of the highly contagious novel coronavirus, Plaintiff's losses are tied inextricably to that virus and are not covered by the Policy").

Beniak submits that the result should be different here because the "Appleman Rule" applies. As will be explained, Beniak's counterargument does not succeed in circumventing the virus exclusion.

The Policy's virus exclusion bars coverage for losses "caused by or resulting from any virus, bacterium or other microorganism that induces or is capable of inducing physical distress, illness or disease." (Compl. ¶43.) COVID-19 is, of course, viral. Here, Beniak ceased its operations in compliance with governmental COVID-based restrictions. But for the "spread" of COVID-19, governments would not have issued Closure Orders, and Beniak would not have ceased operations. Still, Beniak argues that the government closure orders, not the virus itself, should be considered the proximate cause of its losses. (Opp. at 11.) Here, Beniak invokes the "Appleman Rule," a doctrine in insurance law providing that "if an exclusion 'bars coverage for losses caused by a particular peril, the exclusion applies only if the excluded peril was the efficient proximate cause of the loss." *N.J. Transit Corp. v. Certain Underwriters at Lloyd's London*, 221 A.3d 1180, 1192 (N.J. Super. Ct. App. Div. 2019) (quoting *Zurich Am. Ins. Co. v. Keating Bldg. Corp.*, 513 F. Supp. 2d 55, 70 (D.N.J. 2007)), *aff'd on other grounds*, 243 A.3d 1248 (N.J. 2021) (per curiam). The argument is that, although a virus was the first link in the causal chain, the last link before Beniak suffered losses consisted of the Closure Orders, so Beniak can still recover. *See Auto Lenders Acceptance Corp. v. Genteli Ford, Inc.*, 854 A.2d 378, 385 (N.J. 2004) ("[R]ecovery may be allowed where the insured risk was the last step in the chain of causation set in motion by an uninsured peril ...." (citation omitted)). Further, Beniak notes that the virus exclusion here does not include an "anti-concurrent cause," which, when added to a policy, is intended to contract around the efficient proximate cause doctrine. (Opp. at 12.)

While Beniak correctly states the Appleman Rule, its argument ignores one critical point. For the Closure Orders – *i.e.*, actions of civil authority – to trigger coverage, they must be taken *in response to a covered cause of loss*:

> *When a Covered Cause of Loss causes damage to property* other than property at the described premises, we will pay for the actual loss of Business Income you sustain and necessary Extra Expense caused by action of civil authority that prohibits access to the described premises, provided that both of the following apply:

9

> (1)  Access to the area immediately surrounding the damaged property is prohibited by civil authority as a result of the damage, and the described premises are within that area but are not more than one mile from the damaged property; and
>
> (2)  The action of civil authority is taken in response to dangerous physical conditions resulting from the damage or continuation of the *Covered Cause of Loss* that caused the damage, or the action is taken to enable a civil authority to have unimpeded access to the damaged property.

(Compl. ¶39 (emphasis added).)

Beniak concedes that the Closure Orders "were intended to prevent the spread of coronavirus." (Opp. at 27.) It necessarily follows, as held in prior cases, that the Closure Orders "'were issued as the direct result of COVID-19—a cause of loss that falls squarely within the Virus Exclusion,' and are therefore not a Covered Cause of Loss and unable to trigger the Civil Authority coverage." *Downs Ford, Inc. v. Zurich Am. Ins. Co.*, No. 20-8595, 2021 WL 1138141, at *4 (D.N.J. Mar. 25, 2021) (quoting *Franklin EWC, Inc. v. Hartford Fin. Servs. Grp.*, 488 F.Supp.3d 904 (N.D. Cal. 2020)). So, even assuming that the other requirements for Civil Authority coverage are satisfied, the Closure Orders do not trigger coverage because they were taken in response to a cause of loss (COVID-19) that falls within the virus exclusion. That conclusion arises from the plain language of the policy.

A court in this district recently held that a similar virus exclusion barred the coverage sought here even though the exclusion did not contain an anti-concurrent clause. *See, e.g., Beach Glo Tanning Studio Inc. v. Scottsdale Ins. Co.*, No. 20-13901, 2021 WL 2206077, at *7 (D.N.J. May 28, 2021). Judge Martinotti explained:

> [N]either the cause that starts nor ends the sequence of events leading to [the plaintiff's] alleged losses is a Covered Cause of Loss. The starting cause, *i.e.*, COVID-19, is not a Covered Cause of Loss because of the Virus Exclusion. The end cause, which [the plaintiff] claims to be the Closure Orders, is not a Covered Cause of Loss either. The Closure Orders "were issued as the direct result of

10

> COVID-19—a cause of loss that falls squarely within the Virus Exclusion. In other words, the Closure Orders could not be "the efficient proximate cause of [the plaintiff's] losses" for being "the last act that contributed to those losses," because the Closure Orders "and the virus [we]re so inextricably connected that it [wa]s undeniable that the [Closure] Orders were issued because [of] the virus," thereby triggering the Virus Exclusion even though it "d[id] not contain an anti-concurrent clause."

*Id.* (fifth through ninth alterations in original) (internal citations omitted); *see also Garmany of Red Bank, Inc. v. Harleysville Ins. Co.*, No. 20-8676, 2021 WL 1040490, at *6, (D.N.J. Mar. 18, 2021) (finding that, "even if the [p]olicy did not contain an anti-concurrent clause, [p]laintiff cannot show that the [government shutdown orders], and not the COVID-19 virus, were the proximate cause of its losses," because the orders "were issued '[i]n response to the COVID-19 pandemic' ").[4]

I see no reason to depart from those well-reasoned decisions. Therefore, I find that the virus exclusion bars Beniak's claims for loss sustained due to the Closure Orders.

---

[4]  Beniak relies on *Album Realty Corp. v. Am. Home Assur. Co.*, 80 N.Y. 2d 1008 (N.Y. 1992). There, a sprinkler head in the policyholder's basement froze and ruptured, causing water to fill the subbasement of the premises. *Album Realty*, 80 N.Y. 2d at 1009. The flooding caused damage to the mechanical and electrical equipment in the subbasement and caused structural damage to the building. *Id.* The insurer denied coverage for the damage because the policy excluded losses caused by "extremes in temperature" or "freezing." *Id.* at 1010. The policy, however, provided coverage for losses caused by "any [other] external cause," such as water. *Id.* at 1009-11. The Court of Appeals of New York rejected the contention "that the freezing was the proximate, efficient and dominant cause of the flooding and water damage within the meaning of the exclusionary clause." *Id.* at 1010. Instead, the "most direct and obvious cause" for the damage was water. *Id.* at 11. Because the policy did not contain an anti-concurrent clause, the court looked no further for a cause for loss than the water. *Id.*

Here, however, even assuming the "final link" in the chain of events consists of the Closure Orders, those orders are not covered because they were enacted pursuant to a non-covered loss, *i.e.,* a virus. Thus, unlike in *Album Realty* where the "final link" was a covered loss under the policy (water damage), here neither the first link (COVID-19) nor the final cause (the Closure Orders) is a covered loss under the Policy. *See Downs Ford,* 2021 WL 1138141 at *4. Therefore, *Album Realty* is distinguishable.

11

## IV. Conclusion

For the reasons set forth above, I will grant IINA's motion for judgment on the pleadings.

An appropriate order follows.

Dated: August 26, 2021

/s/ Kevin McNulty
_____
**Kevin McNulty**
**United States District Judge**

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

**BENIAK ENTERPRISES, INC,**

      **Plaintiff,**

v.

**INDEMNITY INSURANCE COMPANY OF NORTH AMERICA,**

      **Defendant.**

Civ. No. 20-5536 (KM)(JBC)

**ORDER**

This matter having come before the Court on defendant Indemnity Insurance Company of North America's motion (DE 26) for judgment on the pleadings; and the Court having considered the submissions of the parties; and for the reasons stated in the accompanying Opinion, and good cause appearing therefor;

**IT IS** this 26th day of August 2021,

**ORDERED** that defendant's motion for judgment on the pleadings (DE 26) is **GRANTED**. The clerk shall close the file.

/s/ Kevin McNulty

_____

**Kevin McNulty**
**United States District Judge**